FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 26, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PETER S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 4:17-CV-05173-JTR <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 19, 20. Attorney Chad L. Hatfield represents Peter S. (Plaintiff); Special Assistant United States Attorney Erin Frances Highland represents the Commissioner of Social Security (Defendant). The parties consented to proceed before a magistrate judge. ECF No. 4. After reviewing the administrative record and briefs filed by the parties, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on July

2, 2013, Tr. 136, alleging disability since May 1, 2013, Tr. 262, due to obsessive compulsive disorder, anxiety, migraines, bipolar, spine disorder, and learning disability. Tr. 345. The applications were denied initially and upon reconsideration. Tr. 163-66, 172-79. Administrative Law Judge (ALJ) Tom L. Morris held a hearing on March 22, 2016 and heard testimony from Plaintiff, and vocational expert Paul Prachyl. Tr. 46-97. The ALJ issued an unfavorable decision on June 16, 2016. Tr. 24-38. The Appeals Council denied review on September 26, 2017. Tr. 1-6. The ALJ's June 16, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff initiated this action for judicial review on October 19, 2017. ECF Nos. 1, 7.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 40 years old at the date of application. Tr. 262. He has completed his GED. Tr. 423. His reported work history includes the job of janitor. Tr. 346, 355. When applying for benefits Plaintiff reported that he was working, but that his conditions had caused him to make changes in his ability to work as of October 1, 2012. Tr. 345.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as

being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On June 16, 2016, the ALJ issued a decision finding Plaintiff was not

disabled as defined in the Social Security Act from July 2, 2013 through the date of the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 2, 2013, the date of application. Tr. 26.

At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease; disorders of the muscle, ligament, and fascia; personality disorders; affective disorders/bipolar disorder; anxiety disorder; and substance addiction disorders. Tr. 26.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 26.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> [H]e can frequently balance. He can occasionally climb ramps, stairs, ladders, ropes and scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to vibrations and hazards such as dangerous machinery and unprotected heights.
>
> He is capable of unskilled work involving simple, routine tasks while sustaining adequate concentration, persistence, and pace with customary breaks and lunch. He can have frequent contact with supervisors. He can have superficial interactions with a small group of coworkers and members of the general public. He can have occasional changes to the work environment. He would be off task ten percent of the time over the course of an eight-hour day.

Tr. 28-29. The ALJ identified his past relevant work as a janitor and groundskeeper and concluded that he could not perform his past relevant work. Tr. 37.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of

the vocational expert, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the jobs of small product assembler, hand packager inspector, and cleaner housekeeping. Tr. 37-38. Additionally, the ALJ noted that had he further limited Plaintiff's ability to stand and/or walk to only four hours per day, the vocational expert testified that such an individual could still perform the jobs of dye loading, final assembler, and patcher. Tr. 28. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 2, 2013 through the date of the ALJ's decision. Tr. 38.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly address Plaintiff's symptom statements, (2) failing to properly address the medical opinions in the file, and (3) failing to make a proper step five determination.

**DISCUSSION[1]**

**1. Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's adverse determination that his symptom statements were inconsistent with the medical evidence and other evidence in the record. ECF No. 19 at 17-18.

---

[1]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements regarding his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 30. The ALJ provided three reasons for his determination: (1) Plaintiff's statements were not supported by the medical evidence; (2) Plaintiff's work activity was inconsistent with his reported symptoms; and (3) Plaintiff's criminal history supported questioning his veracity. Tr. 30-34.

### A. Medical Evidence

The ALJ's first reason for rejecting Plaintiff's symptom statements, that symptoms endorsed were not supported by objective medical evidence, is specific, clear, and convincing.

Although it cannot serve as the sole ground for rejecting a claimant's symptom statements, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ pointed to several locations in the record where Plaintiff's symptom statements were at odds with the objective evidence. Tr. 31-32 (repeatedly comparing Plaintiff's complaints of back pain to mild findings on physical examinations); Tr. 32-33 (comparing Plaintiff's complaints of mental health impairments with the fairly normal observations during evaluations and counseling). As such, this reason meets the specific, clear

and convincing standard.

### B. Work Activity

The ALJ's second reason for rejecting Plaintiff's symptom statements, that his work activities cast doubt on his alleged limitations, is specific, clear, and convincing.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ noted that Plaintiff had "been able to seek out and obtain employment part-time since the alleged onset date, to include working as a landscaper, which indicates a much higher degree of function than he alleged at the hearing," Tr. 32, and again that Plaintiff "has looked for and obtained work since the alleged onset date, and actually reports improvement in his mental health with employment," Tr. 34. Plaintiff failed to challenge this reason in his initial briefing. ECF No. 19. He addressed it briefly in his response to Defendant's summary judgment motion, arguing that he should not be penalized for attempting to lead a normal life. ECF No. 21 at 5-6. However, the issue the ALJ brings forth is whether Plaintiff's ability to seek, obtain, and perform work at exertional levels beyond that which he alleges is inconsistent with his reported symptom severity.

Plaintiff's earnings records show that he worked in 2013 and 2014. Tr. 270-71, 279-80. He was working as a janitor when he applied for benefits which included lifting up to fifty pounds. Tr. 346-47, 356. In May of 2014, Plaintiff reported that he had left his job because he became upset, Tr. 701, but had been hired at another position the next month, Tr. 698. He admits to working as a landscaper after the relevant time period. ECF No. 21 at 6. The Court finds that the ALJ's conclusion that Plaintiff's work activity is inconsistent with his reports

of severity of symptoms is supported by substantial evidence and meets the specific, clear and convincing standard.

### C. Criminal History

The ALJ concluded that Plaintiff's extensive criminal history included crimes of dishonesty, which called his veracity into question. Tr. 34. Defendant conceded that under S.S.R. 16-3p this was an inappropriate reason to reject Plaintiff's opinion. ECF No. 20 at 13. However, any resulting error would be harmless as the ALJ has provided other legally sufficient reasons for rejecting Plaintiff's symptom statements. *See Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

### 2. Medical Opinions

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Melvin Wahl, M.D. and Jan M. Kouzes, Ed.D. ECF No. 14 at 14-17.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another

physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**A.     Melvin Wahl, M.D.**

On June 13, 2013, Dr. Wahl evaluated Plaintiff, and on August 22, 2013 he completed a Physical Functional Evaluation form for the Washington Department of Social and Health Services (DSHS). Tr. 561-63. Dr. Wahl diagnosed Plaintiff with spondylolisthesis, herniated degenerative disc degeneration, and lumbar stenosis. Tr. 562. He opined that these impairments would have a moderate limitation in Plaintiff's ability to lift, carry, handle, push, pull, stoop, and crouch. *Id*. He limited Plaintiff to "no lifting over 20 lbs," and "limit bending, twisting." *Id*. On the next page of the form he limited Plaintiff to sedentary work, defined as "[a]ble to lift 10 pounds maximum and frequently lift or carry lightweight articles. Able to walk or stand only for brief periods." Tr. 563. He opined that these impairments would persist indefinitely with available medical treatment. *Id*. The ALJ gave the opinion little weight for two reasons: (1) the opinion was internally inconsistent and (2) the opinion was unsupported by the corresponding treatment notes and imaging results. Tr. 35.

Dr. Wahl is an examining physician whose opinion is contradicted by the opinion of Plaintiff's treating provider, Cheryl Hipolito, M.D. and her evaluation in August of 2013, which limited Plaintiff to light work. Tr. 551. Therefore, the ALJ

was only required to provide specific and legitimate reasons for rejecting the opinion. *Lester*, 81 F.3d at 830-31.

The ALJ's first reason for rejecting the opinion, that it contained unexplained internal inconsistencies, is specific and legitimate. An ALJ may reject an opinion that is internally inconsistent. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). Here, the ALJ noted that on one page of the opinion, Dr. Wahl limited Plaintiff to lifting twenty pounds and on the next page limited Plaintiff to lifting ten pounds. Tr. 35 (citing Tr. 562-63). Plaintiff argues that Dr. Wahl's statements are not inconsistent, but rather the limitation to lifting ten pounds is a part of the limitation to sedentary work, which has other elements that Dr. Wahl may have considered when coming to his determination. ECF No. 21 at 3-4. While this may be a reasonable interpretation of the evidence, the ALJ is tasked with resolving ambiguities, *Andrews*, 53 F.3d at 1039, and it is not the Court's job to second guess the ALJ in such situations, *Tackett*, 180 F.3d at 1097. Therefore, substantial evidence supports the ALJ's treatment of the opinion.

The ALJ's second reason for rejecting the opinion, that it was unsupported by the corresponding treatment notes and imaging results, is not specific and legitimate. An inconsistency between the physician's opinion and his treatment notes is a clear and convincing reason to reject the opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Wahl examined Plaintiff on June 13, 2013 with Desire Ang, ARNP. Tr. 568. The report was dictated by Desiree Ang, ARNP and attached to Dr. Wahl's August 22, 2013 opinion. *Id*. The ALJ fails to state how the treatment notes or imaging reports are inconsistent with Dr. Wahl's opinion. Without some statement as to how the evidence Dr. Wahl attached to the opinion was inconsistent with the opinion, the reason falls short of the specific and legitimate standard. *See Embrey*, 849 F.2d at 421-22 (The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct."). However, any resulting error

would be deemed harmless because the ALJ provided another legally sufficient reason to reject the opinion. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination."). The Court will not disturb the ALJ's treatment of Dr. Wahl's opinion.

### B. Jan M. Kouzes, Ed.D.

On May 22, 2013, Dr. Kouzes completed a Psychological/Psychiatric Evaluation form for DSHS. Tr. 493-98. She diagnosed Plaintiff with Depressive disorder, post-traumatic stress disorder (by history), and personality disorder with antisocial features. Tr. 495. She opined that Plaintiff had marked limitations in the abilities to complete a normal work day and work week without interruptions from psychologically based symptoms and to maintain appropriate behavior in a work setting. Tr. 495-96. She also opined that Plaintiff had a moderate limitation in an additional four abilities. *Id*. When asked to estimate the duration of Plaintiff's impairment with available treatment, Dr. Kouzes responded with "indefinitely without medication." Tr. 496.

The ALJ assigned little weight to Dr. Kouzes' opinion for three reasons: (1) Dr. Kouzes did not review any medical records prior to rendering her opinion; (2) the opinion was rendered prior to the date of the SSI application; and (3) records after application demonstrate that Plaintiff's symptoms improved with counseling and a return to work. Tr. 35. Dr. Kouzes is an examining psychologist whose opinion is contradicted in the record by John Robinson, Ph.D., the reviewing medical consultant who opined in January of 2014 that Plaintiff was capable of performing simple and routine tasks while sustaining adequate concentration, persistence, and pace in two hour intervals, his ability to carry out detailed instructions would periodically be impacted by psychological symptoms, he could generally accept supervision and tolerate routine/superficial interactions with a small group of coworkers and members of the general public. Tr. 147-48.

Therefore, the ALJ was only required to provide specific and legitimate reasons for rejecting the opinion of Dr. Kouzes. *Lester*, 81 F.3d at 830-31.

The ALJ's first reason for rejecting the opinion, that Dr. Kouzes did not review any medical records prior to rendering her opinion, is specific and legitimate. "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 416.927(c)(2)(ii). At the time of the evaluation, Dr. Kouzes stated that she had not reviewed any medical records. Tr. 493. She did complete a mental status exam and the only abnormalities noted were a depressed mood and affect. Tr. 496-97. As such, this is a specific and legitimate reason to reject the opinion.

The ALJ's second reason for rejecting the opinion, that the opinion predated the application date, is not a specific and legitimate reason. The Ninth Circuit has found that "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle*, 533 F.3d at 1165. Plaintiff filed his application for benefits on July 2, 2013, Tr. 136, alleging a disability onset date of May 1, 2013, Tr. 262. Dr. Kouzes' evaluation and resulting opinion took place on May 22, 2013. Tr. 493-98. The ALJ's conclusion that the opinion should be given less weight because it predates the application for benefits is unsupported in the law. Just because SSI benefits are not payable for any period prior to application, 20 C.F.R. §§ 416.202(g), 416.501, does not mean that the evidence prior to application should be disregarded, especially when such evidence is dated after the alleged date of onset. Logic dictates that a person develops a medical impairment and then files an application for benefits, and not that a person files an application for benefits then develops a medical impairment. However, any error from this reason would be considered harmless as the ALJ provided other specific and legitimate reasons for rejecting the opinion. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

The ALJ's third reason for rejecting the opinion, that the evidence demonstrated that Plaintiff's impairments improved with counseling and work, is a specific and legitimate reason. The ALJ stated that "records as of the protective filing date show that when the claimant engaged in counseling, he reported improvement in his symptoms, and actually noted that his symptoms were even more improved by returning to work." Tr. 35.

In her opinion, Dr. Kouzes indicated that Plaintiff's limitations would continue so long as he went without medications and she recommended continued counseling and a vocational rehabilitation assessment. Tr. 496. Inconsistency with the medical evidence of record is a specific and legitimate reason to reject an opinion. *Batson*, 359 F.3d at 1195. Records following the evaluation, and the application for SSI benefits, demonstrate that when Plaintiff engaged in counseling he reported improved symptoms. On October 28, 2013, Plaintiff began counseling with Dianna Moldovan, MSW, LICSW. Tr. 716. In November of 2013, Plaintiff reported that he was working everyday and keeping his anger under control. Tr. 714. By December 10, 2013, work was going well and he requested that his counseling schedule be made around his work schedule. Tr. 711. By February of 2013, Plaintiff canceled one of his counseling appointments due to working. Tr. 707. By March of 2014, Plaintiff reported his life was going well. Tr. 706. Plaintiff then missed his next three counseling sessions. Tr. 702-05. When he returned to counseling in May of 2014, Plaintiff reported that he had left his job because he became upset and was struggling since leaving his job. Tr. 701. He expressed a desire to find another job because having one helped him feel fulfilled. *Id*. By June of 2014, Plaintiff had another job and was happy to be working. Tr. 698. Plaintiff then missed counseling sessions in July and August of 2014. Tr. 695-96. When he returned in September of 2014, he reported that he had gotten in a fight with his step-son and the police had become involved. Tr. 694. He then failed to appear for his next appointment, Tr. 693, and when he appeared for his

1  October 17, 2014 appointment, he admitted to currently being under the influence
2  of marijuana, and the appointment was cut short by the counselor. Tr. 692.
3  Plaintiff failed to attend his next counseling appointment. Tr. 691. When he
4  returned to counseling, Plaintiff admitted to smoking marijuana, drinking alcohol,
5  and taking medications not prescribed to him. Tr. 690. His counselor noted that
6  Plaintiff "has been a struggle to have in session. His thoughts are much more
7  tangential and his mood labile. He often appears to either be high from pot or
8  using too much medication such as Xanax or trazadone." *Id*. Plaintiff then failed
9  to attend his next three counseling appointments. Tr. 687-89. He returned to
10 counseling on February 3, 2015. Tr. 686. At his next appointment on February 24,
11 2015, he reported doing well, staying sober, and working to take his medications as
12 directed. Tr. 685. Plaintiff then missed four appointments in March of 2015 and
13 did not return to counseling. Tr. 680-84. By April 30, 2015, he reported continued
14 struggles with anger in medication management sessions, Tr. 676, and by July 9,
15 2015, he reported increased symptoms of depression, Tr. 675.

Therefore, the ALJ's conclusion that Plaintiff's symptoms improved with counseling and medication is supported by substantial evidence. When Plaintiff was engaged in counseling, he reported improved symptoms, but when he failed to engage in counseling, he reported an increase in symptoms. As such, the Court will not disturb the ALJ's treatment of the opinion.

**3.     Step Five**

Plaintiff argues that the ALJ erred in his step five determination because the testimony of the vocational expert was premised on an incomplete hypothetical stemming from an inaccurate residual functional capacity determination. ECF No. 19 at 18-19. Plaintiff's argument is based on successfully showing that the ALJ erred in his treatment of the symptom statements and medical opinions. *Id*. Because the Court found that the ALJ did not harmfully err in his treatment of Plaintiff's symptom statements and the medical opinions, the Plaintiff's argument

is without merit.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant and the file shall be CLOSED**.

DATED February 26, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE